SCOTT E. BRADFORD, OSB # 062824
United States Attorney
District of Oregon
**CASSADY A. ADAMS, CO Bar #48807**
Assistant United States Attorney
Cassady.Adams@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:26-cr-00021-AN** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **NOE GERGORIO MEDINA-PEREZ,** | |
| **Defendant.** | |

## Introduction

Defendant Noe Gergorio Medina-Perez is before the Court for sentencing following entry of a guilty plea to the charge of possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi).

In this case, the United States recommends a sentence of 12 months and one day custody, followed by four years of supervised release. This is a joint recommendation.

//

## Factual Background

### A. The Offense Conduct

On January 16, 2026, investigators executed a search warrant for a residence and an individual known to receive and distribute fentanyl. PSR ¶ 18. From that search, that individual (herein "CD") agreed to cooperate with investigators. *Id.* CD contacted "Alex," one of their suppliers of fentanyl, to set up a buy. PSR ¶ 19. Investigators learned that "Alex" ran a fentanyl dispatch network, and as part of that network, "Alex" relied on runners to deliver fentanyl orders to customers. *Id.*

Later that day, investigators set up surveillance at the arranged meet location, and they observed a 2013 Hyundai Elantra arrive at the location. PSR ¶ 20. The investigators then watched and observed an individual (later identified as defendant Medina-Perez) exit the vehicle, looked around the area, and check his cell phone. *Id.* Shortly thereafter, CD received a phone call from "Alex," who informed CD that the runner was at the meet location. *Id.* After learning this, investigators approached Medina-Perez, believing him to be the runner, and arrested him without incident. *Id.*

When officers observed Medina-Perez's vehicle, they found, in plain view, a clear plastic bag that contained six smaller bags. PSR ¶ 21. Inside the bags, officers discovered a white chunky powder that later tested presumptively positive for fentanyl. *Id.* The combined weight of the fentanyl powder was 131.6 gross grams. *Id.* A photograph of the fentanyl is shown below for the Court's reference:




Following his arrest on the criminal complaint in this case, a federal grand jury returned a single-count indictment that charged Medina-Perez with 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi), for knowingly and intentionally possessing with intent to distribute 40 grams or more of a substance that contained a detectable amount of fentanyl (a Schedule II controlled substance). PSR ¶ 1.

**B. The Plea Agreement & Guideline Computations**

On September 1, 2026, Medina-Perez pled guilty to count one of the indictment—possession with intent to distribute fentanyl. PSR ¶ 1.

The presentence report has calculated the following guidelines for the Medina-Perez (prior to the application of any variance under 18 U.S.C. § 3553(a)), which the government agrees with:

//

//

| Guideline Provision | Levels |
|---|---|
| **Count One: Possession with Intent to Distribute Fentanyl** | |
| Base Offense Level [USSG § 2D1.1(a)(5)] | 24 |
| Safety Valve Reduction [USSG § 2D1.1(b)(18)] | -2 |
| Adjustment for Role in the Offense (Minimal/Minor Participant) [USSG § 3B1.2(a)-(b)] | -3 |
| Zero-Point Offender [USSG § 4C1.1] | -2 |
| Acceptance of Responsibility [USSG § 3E1.1] | -3 |
| **Total Offense Level (Prior to § 3553(a) Variance)** | **14** |

Because Medina-Perez has a criminal history score of zero, his criminal history category is I. PSR ¶ 39. This results in an advisory guideline range of 15-21 months custody (prior to any variance). PSR ¶ 59.

Additionally, as part of the plea agreement, the government recommends that Medina-Perez receive a two-level downward variance, pursuant to 18 U.S.C. § 3553(a) for his prompt resolution of the case. PSR ¶ 13. After the two-level variance, Medina-Perez's sentencing range is 10-16 months custody, with his offense level reduced to 12 pursuant to 18 U.S.C. § 3553(a). *See* USSG Ch. 5 Pt. A. (noting that a person with an Offense Level of 12 and a Criminal History Category of I would have an imprisonment range of 10 to 16 months).

The government jointly recommends a sentence of 12 months and one day of custody in this case, followed by four years of supervised release.

## Argument

### A. 18 U.S.C. 3553(a) Sentencing Factors

When district courts exercise their sentencing discretion, they rely on 18 U.S.C. § 3553(a) "to craft a sentence that, among other considerations, reflects 'the seriousness of the offense' and avoids 'unwarranted sentence disparities' among similarly situated defendants."

*Barrett v. United States*, 146 S. Ct. 482, 494 (2026). In general, 18 U.S.C. § 3553(a) directs district courts to consider the following factors "in determining the particular sentence to be imposed":

> (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"
>
> (2) "the need for the sentence imposed" to serve purposes of the criminal laws;
>
> (3) "the kinds of sentences available;"
>
> (4) "the kinds of sentence and the sentencing range" established by the guidelines;
>
> (5) "any pertinent policy statement" issued by the Sentencing Commission;
>
> (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and
>
> (7) "the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553(a)(1)-(7).

From the government's perspective, the § 3553(a) factors that warrant attention in this case include (1) "the nature and circumstances of the offense" and (2) "the need for the sentence imposed" to serve the purposes of its criminal laws. Specifically, the imposed sentence should "reflect the seriousness of the offense, [] promote respect for the law, . . . provide just punishment," "afford adequate deterrence to [future] criminal conduct," "protect the public from future crimes of the defendant," and "provide the defendant with needed educational or vocational training . . . or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

//

**B. Analysis of Sentencing Factors**

Earlier this year, investigators arrested defendant, Medina-Perez, for his involvement in a planned drug deal between CD and "Alex" (a fentanyl dispatcher) in Portland. While Medina-Perez was a runner (i.e., a courier) for the drug trafficking organization, his conduct still perpetuated the distribution of fentanyl.

The distribution of fentanyl poses serious public safety concerns. In 2024, Oregon alone had nearly 1,000 fentanyl-related drug overdose deaths. Elizabeth McCarthy, Courtney Fultineer, & Laura Chisholm, *2025 Opioids and the Ongoing Drug Overdose Crisis in Oregon*, OREGON HEALTH AUTHORITY 16, fig. 4, https://www.oregon.gov/oha/PH/PREVENTIONWELLNESS/SUBSTANCEUSE/OPIOIDS/SiteAssets/Pages/publications/2025%20Oregon%20Opioid%20Overdose%20Report.pdf. The consumption of fentanyl, even in small quantities, can be lethal. *See* DEA, *Drug Fact Sheet: Fentanyl* (Oct. 2022), https://www.dea.gov/sites/default/files/2022-12/Fentanyl%202022%20Drug%20Fact%20Sheet.pdf; *see also* DEA, *Facts About Fentanyl*, https://www.dea.gov/resources/facts-about-fentanyl (last visited Oct. 23, 2026) ("Two milligrams of fentanyl can be lethal depending on a person's body size, tolerance, and past usage."). Thus, Medina-Perez's conduct was serious because it involved the continued spread of fentanyl in Oregon.

Medina-Perez reported that alcohol and other drugs have never been an issue for him, and he does not suffer from any substance abuse issues. PSR ¶ 54. Given that, it does not appear that Medina-Perez's drug trafficking crime in this case was motivated by his own drug addiction.

Medina-Perez is a Mexican citizen. PSR ¶ 44. Because he is not a United States citizen, Medina-Perez is subject to removal from the United States as a collateral consequence, upon the conclusion of his sentence in this case. PSR ¶ 5.

Medina-Perez has no criminal history, including no other pending charges or prior arrests. PSR ¶¶ 36-42. That gives him a criminal history category of I. PSR ¶ 39. A sentence of twelve months and one day custody is appropriate, given this lack of criminal history. Medina-Perez also indicated a willingness to plead guilty at an early stage of this case. Given that, the government recommends the two-level downward variance, pursuant to 18 U.S.C. § 3553(a).

The requested sentence of 12 months and one day custody promotes respect for the law, provides just punishment, and affords adequate deterrence by holding Medina-Perez accountable for his role in this case. For the foregoing reasons, the government believes that this sentencing recommendation in this case appropriately accounts for the factors set forth in 18 U.S.C. § 3553(a).

**Conclusion**

Based on the foregoing, the government recommends the Court impose a sentence of 12 months and one day custody, followed by a four-year term of supervised release, and a $100 fee assessment.

Dated: November 2, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

/s/*Cassady A. Adams*
CASSADY A. ADAMS, CO Bar #48807
Assistant United States Attorney